**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 08 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| YOUNG HAN, individually and as successor-in-interest to decedent Joseph Han; NAM HAN; DAVID HAN, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> CITY OF FOLSOM, a municipal corporation; SAMUEL L. SPIEGEL, in his capacity as Chief of Police for the City of Folsom; PAUL BARBER, individually and in his capacity as Police Officer for the City of Folsom; DAREN PROCIW, individually and in his capacity as Police Officer for the City of Folsom; RON PETERSON, individually and in his capacity as Sergeant of Police for the City of Folsom, <br><br> Defendants - Appellees. | No. 11-17930 <br><br> D.C. No. 2:10-CV-00633-MCE-GGH <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted October 16, 2013
San Francisco, California

Before:  THOMAS and MCKEOWN, Circuit Judges, and BENNETT, District Judge.[**]

Plaintiffs-Appellants Young Han, Nam Han, and David Han (the Hans) appeal from the district court's order granting summary judgment in favor of Defendants-Appellees, the City of Folsom (the City), Folsom Police Chief Samuel Spiegel (Spiegel), Sergeant Ronald Peterson (Peterson), Officer Paul Barber (Barber), and Officer Daren Prociw (Prociw), on the Hans' federal claims brought under 42 U.S.C. § 1983 and their related state-law claims.  We have jurisdiction under 28 U.S.C. § 1291.  For the reasons discussed below, we affirm in part, reverse in part, and remand.

The Hans claim that three Folsom police officers—Barber, Prociw, and Peterson—used excessive force and acted negligently when they shot and killed the Hans' son/brother, Joseph Han (Joseph), during a confrontation inside the Hans' home.  The three officers were called to the Hans' home to help deal with 23-year-old Joseph, who had been acting mentally unstable for a few days.  Upon arriving, the Hans asked the officers to go inside their home and speak with Joseph

---

[**] The Honorable Mark W. Bennett, District Judge for the U.S. District Court for the Northern District of Iowa, sitting by designation.

in his room.  The officers went to Joseph's room, where they found him holding a three-to-four-inch camping knife.  Joseph told the officers to leave his room and began approaching the officers while holding the knife.  The confrontation escalated.  Barber fired his Taser at Joseph, then Prociw fired his Taser, but both were ineffective.  Barber then shot Joseph with his gun before backing out of the room.  Soon after, Prociw deployed another Taser and then Peterson shot Joseph with his gun before subduing him.  Joseph later died from the gunshots.

The Hans claim that Barber and Peterson used excessive force in violation of the Fourth Amendment when they shot Joseph.  The Hans do not, however, challenge the officers' use of their Tasers.  Because Prociw only used his Taser, and because the Hans conceded at oral argument that there is no liability against him, we affirm summary judgment on the Hans' excessive force claim against Prociw.  We also affirm summary judgment on the Hans' excessive force claims against Barber and Peterson because their actions were not "'objectively [un]reasonable' in light of the facts and circumstances confronting them . . . ." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Undisputed evidence in the record establishes that Joseph moved toward the officers, with his knife, in the confines of his room, and did not comply with the officers' commands to drop his weapon. "[W]here a suspect threatens an officer with a weapon such as a gun or a knife, the

3

officer is justified in using deadly force." *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (en banc) (collecting cases). Moreover, the Hans' own police-tactics expert, Lou Reiter (Reiter), testified that Barber's and Peterson's use of deadly force was reasonable under the circumstances.

The Hans' argue that, despite Reiter's testimony, the officers acted unreasonably because the officers *created* the need to use force by confronting Joseph inside his room when they could have chosen to retreat and monitor Joseph from outside the room. But, our cases do not "permit a plaintiff to establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002). Even if an officer's pre-shooting conduct negligently provokes a suspect to violence, "that negligent [conduct] will not transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation." *Id.* Also, officers need not use "the least intrusive means of responding to an exigent situation"; they need only act reasonably. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Under the circumstances here, Barber's and Peterson's use of force was not unreasonable, and, thus, not unconstitutional.

Even if Barber and Peterson violated Joseph's Fourth Amendment rights, we conclude that they are entitled to qualified immunity on the Hans' excessive force claims. An officer is entitled to qualified immunity unless he violates a person's clearly established constitutional or statutory rights. *See Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Where, as here, "an officer's use of force was premised on a *reasonable* belief that such force was lawful, the officer will be granted immunity from suit, notwithstanding the fact excessive force was deployed." *Bryan v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010) (internal quotation marks omitted). Accordingly, the district court correctly granted summary judgment in the officers' favor on the alternative basis of qualified immunity.

Because we find no constitutional violation by the individual officers, there is "no basis for finding the officers [were] inadequately trained." *Scott*, 39 F.3d at 916. We therefore affirm summary judgment in favor of the City and Spiegel[1] on the Hans' § 1983 claims. Similarly, "because there is no federal constitutional violation and no conduct specified which constitutes a state constitutional violation, there is no conduct upon which to base a claim for liability under [California Civil Code Section 52.1]." *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1170–71 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian*

---

[1] The Hans offer no independent basis for Spiegel's § 1983 liability.

5

*Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997) (en banc). Thus, we affirm summary judgment on the Hans' state-law claims under Section 52.1.

Though we affirm summary judgment in favor of all Defendants-Appellees on the Hans' federal and state constitutional claims, we reverse summary judgment on two of the Hans' state-law negligence claims: wrongful death and negligent infliction of emotional distress. The district court analyzed these negligence claims under the same standards it applied to the Hans' constitutional claims and held that, because the Hans' constitutional claims fail, so too must their negligence claims. But, while this case was pending on appeal, the California Supreme Court decided *Hayes v. County of San Diego*, 305 P.3d 252 (Cal. 2013). In *Hayes,* the court clarified that "state negligence law . . . is broader than federal Fourth Amendment law" and that "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability." *Id.* at 263. Thus, while the officers' alleged pre-shooting negligence does not establish a constitutional violation, it may establish common-law negligence under California law. The district court therefore incorrectly held that the lack of any constitutional violation is fatal to the Hans' wrongful death and negligent infliction of emotional distress claims. The Defendants-Appellees offer no argument, other

than that relied upon by the district court, as to why summary judgment should be affirmed on these claims.

Finally, the district court correctly granted summary judgment on the Hans' state-law claim for negligent hiring, retaining, training, supervision, and discipline because cities are not liable for such conduct under California law. *See de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 252 (2007) ("We find no relevant case law approving a claim for direct liability based on a public entity's allegedly negligent hiring and supervision practices.").

In sum, we affirm summary judgment in favor of Defendants-Appellees on the Hans' § 1983, California Civil Code Section 52.1, and negligent hiring, training, supervision, and discipline claims. We reverse summary judgment on the Hans' other state-law negligence claims—wrongful death and negligent infliction of emotional distress—and remand this case to the district court for further proceedings consistent with this memorandum disposition. Each party will bear its own costs.

AFFIRMED in part, REVERSED in part, and REMANDED.